UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Dustin J. Iacovazzi, | : | Case No. 5:23-00682-MJC |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| SnowWolf, fka WolfDesign and WolfGroup | : | |
|     International, dba Stonebrooke | : | |
|     Equipment, Inc., | : | |
| | : | |
|     Plaintiff, | : | Adversary Proceeding |
| v. | : | No. 5:23-00042-MJC |
| | : | |
| Dustin J. Iacovazzi, | : | |
| | : | |
|     Defendant. | : | |

# **O P I N I O N**

## I. INTRODUCTION

This adversary action relates to the sale of commercial snowplow equipment from the plaintiff that was allegedly never paid for by the buyer. In the complaint, the buyer is alleged to either be a limited liability company and/or the debtor. The plaintiff's complaint alleges counts for breach of contract, quantum meruit, unjust enrichment and fraud (objecting to dischargeability under 11 U.S.C. §523(a)(2)(A)).[1] The defendant moves to dismiss the proceeding since the debtor was not a party to the contract and the complaint lacks specificity as is required to assert a fraud claim. For the reasons set forth below, the motion to dismiss will be granted with leave to amend, with the exception of the §727 claim which will be dismissed with prejudice.

---

[1] The Complaint also referenced an objection to the debtor's discharge under 11 U.S.C. §727. At argument on November 8, 2023, the Debtor's Counsel agreed to withdraw any objection under §727 with prejudice.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the United States District Court for the Middle District of Pennsylvania dated March 11, 2016. The non-dischargeability claim asserted in the Complaint is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I). The state law common law claims are non-core. The parties consented to entry of final orders and judgment by the Bankruptcy Court. Venue is proper pursuant to 28 U.S.C. §1409(a).

## III. BACKGROUND AND PROCEDURAL HISTORY

### A. Debtor/Defendant's Bankruptcy Case

Dustin J. Iacovazzi ("Debtor" or "Defendant") filed a voluntary petition under Chapter 13 of the Bankruptcy Code[2] on March 30, 2023. BK Dkt. # 1.[3] On May 15, 2023, Debtor filed his Schedules, Statement of Financial Affairs, and related papers. BK Dkt. # 28. Debtor subsequently amended his Schedule A/B, which lists an interest in "Mr. Mowitall, LLC d/b/a Dirtgrassnow Enterprises", which Debtor claims is "not in operation" and "debts exceed asset value" and has a value of $0.00. BK Dkt. # 68 at 3. Debtor also listed a disputed debt to "Snow Wolf" in the amount of $94,338.35 for a "business guaranty."[4] *Id.* at 21.

---

[2] All code references are to Title 11 under the Bankruptcy Code.

[3] Docket entries referenced in the main bankruptcy case are designated as "BK Dkt." and in this adversary proceeding as "Dkt."

[4] Although Debtor/Defendant references a "guaranty" in his Schedules, Plaintiff's Complaint does not reference any guaranty.

2

On May 15, 2023, Debtor filed his initial Chapter 13 Plan. BK Dkt. # 29. This plan proposed monthly payments of $257.15 to the Chapter 13 Trustee ("Trustee") for 36 months for a total base amount of $9,000. After amendments to the plan and objections thereto, Debtor filed his Third Amended Plan on November 14, 2023 ("Plan"). BK Dkt. # 91. The Plan provides that Debtor will pay to the Trustee a total of $34,773.97. The Plan was confirmed on January 5, 2024. BK Dkt. # 103.

On April 12, 2023, Plaintiff filed a Proof of Claim (# 5-1) ("Claim")[5] in the amount $74,575.77 for "good (sic) sold." Attached to the Claim are 10 invoices ("Invoices") from SnowWolf billed to "Mr. Mow It All" for various snow plowing equipment and interest charges ("Equipment").

On September 21, 2023, Debtor filed an Objection to the Claim ("Objection to Claim"). BK Dkt. # 75. Debtor asserts that Plaintiff does not have an enforceable contract obligation with Debtor under Pennsylvania law. Debtor argues that (i) Debtor was not a party to the Contract with Plaintiff as "admitted" by the Invoices attached to the Claim, and (ii) attached as Exhibit B to the Adversary Complaint (discussed below) is a "Confidential Credit Application" that "clearly" sets forth that Plaintiff's customer was "Mr. Mow It All Property Management LLC dba dirtgrassenterprises."[6]

On October 18, 2023, Plaintiff responded to the Objection to Claim and asserted that "the Adversary Complaint specifically spells out how Debtor/Objector is personally responsible for the

---

[5] The Claim identifies the creditor as "SnowWolf et al." and indicates other names of Plaintiff being WolfDesign, WolfGroup International, and Stonebrooke Equipment. In the Complaint, Plaintiff is identified as SnowWolf f/k/a WolfDesign and WolfGroup International d/b/a Stonebrook Equipment, Inc. and is a Minnesota corporation ("SnowWolf" or "Plaintiff"). Dkt. # 1 at ¶ 5.

[6] The Credit Application actually refences the customer as "MR. MOWITALL PROPERTY MANAGEMENT LLC dba Dirtgrasssnow Enterprises."

debt in question." BK Dkt. # 79 at ¶ 10. On November 15, 2023, argument was held on the Objection to Claim and the Response and the matter was taken under advisement as the issues were intertwined with the issues set forth in the adversary proceeding discussed below.

**B.    Adversary Proceeding**

When a debtor files a new bankruptcy case, the Clerk of Court issues a notice to parties in interest providing notice of the commencement of the case and setting several deadlines ("Notice"). *See* BK Dkt. # 6 and 8. On the Notice in this case, it clearly provides that a complaint objecting to the discharge of a debt must be filed by July 7, 2023.[7] *Id.*

Instead of filing a complaint as set forth on the Notice and required by the Rules, on July 3, 2023, Plaintiff filed a 2-page Objection to Discharge in the main bankruptcy case. BK Dkt. # 49. Debtor promptly filed a motion to dismiss. After briefing and argument, the Court entered an Order denying Debtor's motion to dismiss and granted Plaintiff leave to file an adversary complaint "consistent with the Objection." Because the deadline for filing a complaint to determine dischargeability had passed, the Court specifically conditioned its Order on limiting Plaintiff to the allegations made in his Objection to Discharge. BK Dkt. # 69.

On August 22, 2023, Plaintiff commenced this adversary proceeding against Defendant by filing an "Adversarial Complaint" ("Complaint"). Dkt. # 1. The Complaint asserts 4 counts: (1) Breach of Contract, (2) Quantum Meruit, (3) Unjust Enrichment, and (4) Fraud (referencing §§523(a)(2)(A) and 727). Plaintiff sought judgment in its favor in the amount of $74,575.77, plus interest and a declaration that the debt is nondischargeable.

---

[7] Bankruptcy Rule 4007(a) provides for the filing of a complaint and 4007(c) provides that a complaint to determine the dischargeability of a debt under §523(c) must be filed no later than 60 days after first date set for the meeting of creditors under §341(a). Further, Rule 7001(6) provides that a proceeding to determine the dischargeability of a debt is an adversary proceeding, which pursuant to Fed. R. Civ. P. 3 is commenced by filing a complaint.

4

On September 21, 2023, Defendant filed a Motion to Dismiss Adversary Complaint with Prejudice ("Motion to Dismiss") pursuant to Fed R. Civ. P. 12(b)(6) and Brief in support. *See* Dkt. # 7 and 8. Plaintiff filed its Response and Brief in opposition. Dkt. # 14 and 15. Oral argument was held on November 8, 2023. At argument, Plaintiff's Counsel acknowledged that he did not aver facts to establish a §727 objection to discharge and withdrew that claim on the record. The Court took the Motion to Dismiss under advisement.

The parties subsequently agreed that no argument or evidence was necessary on Debtor's Objection to Claim and they would rest on the legal arguments they made on the Motion to Dismiss. Accordingly, the Objection to Claim was also taken under advisement with a decision to be made in conjunction with the Motion to Dismiss.

### IV. LEGAL STANDARD FOR A MOTION TO DISMISS

The standard for reviewing a motion to dismiss is:

> Federal Rule of Bankruptcy Procedure 7012(b) ("F.R.B.P.") makes Federal Rule of Civil Procedure 12(b)-(i) ("F.R.C.P.") applicable to bankruptcy adversary proceedings. F.R.C.P. 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). However, the Supreme Court heightened this pleading standard by holding that for a complaint to withstand a motion to dismiss, a claim must be more than possible, it must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L.Ed.2d 929 (2007).
>
> * * *
>
> Two years later, the Supreme Court gave further guidance as to the meaning of "facial plausibility." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

At the motion to dismiss stage, only well pled facts are viewed in the light most favorable to the non-moving party, in this case, the Debtor. *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 291 (3d Cir. 1988). Alternatively, legal conclusions are not assumed to be correct at the motion to dismiss stage.

\* \* \*

The Third Circuit has also provided guidance on the differing standards regarding a complaint's alleged facts and legal conclusions at the motion to dismiss stage:

> The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Lewis v. The Money Source, Inc. (In re Lewis)*, 621 B.R. 626, 628–29 (Bankr. M.D. Pa. 2020) (per J. Opel). This Court shall follow this standard in reviewing Defendant's Moton to Dismiss in this proceeding.

V.  **LEGAL ANALYSIS**

Defendant seeks to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and for failing to allege sufficient facts to support its §523(a)(2)(A) nondischargeability claim. Defendant asserts that (i) Debtor was not a party to the contract and, accordingly, cannot be bound by its terms, and (ii) Plaintiff has not alleged any facts to support a determination of nondischargeability as the alleged fraud claim was not pleaded with particularity as required by Fed. R. Civ. P. 9(b). Each of these issues will be addressed below.

6

### A. The Complaint Does Not Sufficiently Plead Debtor Was a Party to Any Contract

Count I of the Complaint is a claim for breach of contract. Plaintiff alleges in the Complaint that "[t]he contract between the parties was both oral and written," Compl. at ¶ 14, and the written contract was attached as Exhibit B, s*ee* Dkt. # 1-2. Exhibit B is a "Confidential Credit Application" that refences the "Customer" as "MR. MOWITALL PROPERTY MANAGEMENT LLC dba Dirtgrasssnow Enterprises." Defendant is identified as the Managing Member and it appears that Defendant executed the application as the Managing Member on November 30, 2021.

Count I also alleges that Defendant agreed to pay for goods, merchandise, or services referenced in the Invoices, which were attached as Exhibit A. *See* Dkt. # 1-1. The Invoices, however, are all addressed to "MR. Mow It All" and Defendant's name does not appear on any of the Invoices.

Pennsylvania law[8] is clear, to show a breach of contract, a party must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McShea v. City of Phila.,* 606 Pa. 88, 97 (Pa. 2010) (citing *Hart v. Arnold,* 884 A.2d 316, 332 (Pa. Super. 2005)). "When performance of a duty under a contract is due, any nonperformance is a breach." *Widmer Engineering, Inc. v. Dufalla,* 837 A.2d 459, 467 (Pa. Super. 2003) (quoting Restatement (Second) of Contracts §235(2) (1981)).

As stated above, Defendant argues that it was not a party to any alleged contract and this is evidenced by the attached Invoices and Credit Application which reference "Mr. Mow It All" (or some version of Defendant's businesses' name) and not Defendant. According to Defendant, Plaintiff admits as much with the filing of the Claim which contains no reference to Defendant,

---

[8] For purposes of the Motion to Dismiss, the Court will assume that Pennsylvania law applies.

7

only Mr. MowItAll. Therefore, Defendant argues that Plaintiff has failed to plead an enforceable obligation under state law against Defendant and Count I should be dismissed.

As to Defendant's claim that he was not a party to any contract, Plaintiff argues that it also brought a fraud claim based on Defendant's misuse of the various corporate monikers, Defendant having held himself out as these numerous corporations, and the fact that some of these entities never existed. Further, Plaintiff alleged as part of the Complaint, the concept of piercing the corporate veil pursuant to which Plaintiff seeks to hold Defendant personally liable for any debt. Plaintiff additionally argues that Defendant acknowledged in his schedules that he personally guaranteed the debt and for him to dispute the debt now is disingenuous.

Quite frankly, the Complaint is not drafted very clearly and most of the facts that Plaintiff argues in its brief are not in the Complaint. Plaintiff references throughout the Complaint that Debtor, individually, purchased the Equipment and breached the contract. However, the documents attached as Exhibits show an entity "MR Mow It All", or some version of that name, was the credit applicant and then the buyer or customer. Certainly, if Plaintiff is seeking to hold Defendant liable under a theory of piercing the corporate veil (as it argues in its Brief) for any alleged breach by Mr. MowItAll under its contract with Plaintiff then that should be clearly spelled out. As it stands now, Count I fails to state a claim and Defendant's Motion to Dismiss as to Count I will be granted.

    **B.**    **Plaintiff's Claims for Quantum Meruit and**
          **<u>Unjust Enrichment Have Not Been Sufficiently Pleaded</u>**

Counts II and III of the Complaint are for quantum meruit and unjust enrichment. Plaintiff pleaded these Counts in the alternative if it was determined that in fact no contract existed between Plaintiff and Defendant. Defendant devotes little time to disputing these counts, arguing that

8

Case 5:23-ap-00042-MJC    Doc 21    Filed 03/22/24    Entered 03/22/24 13:48:02    Desc
Main Document    Page 8 of 16

because the Complaint establishes on its face that no contract existed with Defendant, the claims for quantum meruit and unjust enrichment fail. Plaintiff did not address these claims in its brief.

Again, assuming that Pennsylvania law applies, quantum meruit and unjust enrichment are claims sounding in contract and quasi-contract and are generally available when breach of an express contract is unavailable.

> A claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate:
> (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 645 Pa. 362, 378 (Pa. 2018) (quoting *Shafer Elec. & Const. v. Mantia*, 626 Pa. 258, 264 (2014)).

Quantum meruit is generally only available to recover the value of services performed and is not applicable when the contract is one for the sale of goods. *See Belmont Indus., Inc. v. Bechtel Corp.*, 425 F. Supp. 524, 527 (E.D. Pa. 1976) ("A quantum meruit recovery is incompatible with the concept of a contract for the sale of goods."). Plaintiff's Complaint has not pleaded any facts to suggest it provided any services to Defendant and the attached Invoices do not include services. Accordingly, Count II will be dismissed for failure to state a claim.

As to the unjust enrichment claim, generally, under Pennsylvania law, "the unjust enrichment doctrine is inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 293 (E.D. Pa. 2020) (citing *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279 (1969))). An unjust

enrichment claim pleaded in the alternative is allowed only when there is some dispute as to whether a valid, enforceable written contract exists. *See Hollenshead*, 447 F. Supp. 3d at 293 (quoting *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012)).

Here, Debtor/Defendant admitted in his schedules that he guaranteed the debt, which raises a question whether there may be a guaranty contract between Defendant and his business(es). If that is the case, then Plaintiff's unjust enrichment claim cannot stand. Accordingly, Count III will be dismissed with leave to amend.

However, this does not end the analysis as Plaintiff has also asserted a fraud claim (Count IV) that intertwines the alleged contractual arrangement with piercing the corporate veil as set forth below.

### C. Plaintiff Has Not Sufficiently Pleaded Count IV to Satisfy Bankruptcy Rules 7008[9] and 7009 and Civil Rule 9(b)

Count IV of the Complaint is entitled "Fraud" and is a hodgepodge of averments which also includes citations to §§523(a)(2)(A) and 727, and the Pennsylvania Rules of Civil Procedure. Plaintiff alleges, in material part, that:

- Defendant intentionally, wantonly and deliberately purchased the goods in question with no intention of paying for them.

- Defendant ordered the goods at a time when he was insolvent and was planning on filing bankruptcy.

- Defendant deliberately set up several businesses, fictitious names, and sham corporations for the purpose of evading liability.

- Without paying a cent for them, Defendant subsequently sold the goods to a third party who is an insider of Defendant.

---

[9] Fed. Bank. R. Proc. 7008 provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."

10

- Defendant comingled funds and assets between insiders and insider entities to avoid liability and minimize losses.

- Defendant did not hold himself out as a corporation and hid behind a corporate veil.

Compl. ¶¶ 24 – 33.

Plaintiff alleges that the above actions constitute fraud and justify piercing the corporate veil. In the same Count, Plaintiff also states that §§523(a)(2)(A) and 727 excepts from discharge debts of money if such debts were obtained by false pretenses and fraud.

As drafted, it's difficult to discern whether Plaintiff is attempting to plead a common law fraud claim or is asserting that any debt owed to Plaintiff is nondischargeable pursuant to §523(a)(2)(A). The parties appear to construe Count IV as a general fraud claim which also seeks to except the debt resulting from fraud as nondischargeable. In either event, Defendant asserts several grounds to dismiss Count IV. Defendant argues that Plaintiff failed to plead facts that establish a debt payable to Defendant or facts with sufficient particularity that Defendant committed fraud and any resulting debt is nondischargeable under §523(a)(2)(A). Defendant also challenges any attempt to pierce the corporate veil. The Court will address that ground in the next section.

In response, Plaintiff counters stating that Debtor/Defendant is personally liable based upon a "piercing the corporate veil" theory as Defendant intentionally used various "corporate monikers" to confuse Plaintiff. Plaintiff also argues that it sufficiently pleaded its fraud claim because it incorporated by reference a complaint that was filed in state court against Debtor and several other defendants.

11

Complaints that allege fraud are subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b)[10] requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." *In re Demeza*, 570 B.R. 33, 37 (Bankr. M.D. Pa. 2017) (quoting Fed. R. Civ. P. 9(b)). The intent element of fraud may be alleged generally. *See* Civil Rule 9(b).

> The particularity pleading requirement for fraud allegations serves important objectives. It gives a defendant fair notice of the claim against him, provides an increased measure of protection for a party's reputation, and hopefully, reduces the number of frivolous suits brought to extract settlements.

*Demeza*, 570 B.R. at 37 (citing *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002) and *Craftmatic Securities Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).

Plaintiff asserted an objection to dischargeability of its debt pursuant to §523(a)(2)(A). That subsection excepts from an individual debtor's Chapter 13 discharge any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. §523(a)(2)(A). To prevail on a §523(a)(2)(A) claim, a creditor must prove all of the following: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deprive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation.[11] *In re Griffith*, 2014 WL 4385743, *3

---

[10] Fed. R. Civ. P. 9 is made applicable to this adversary proceeding by Fed. R. Bank. P. 7009.

[11] Courts have observed the distinction among the three grounds:

(Bankr. M.D. Pa. Sept. 4, 2014); *In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009). A breach of contract alone does not establish actual fraud or misrepresentation under §523(a)(2)(A). *In re Witmer*, 541 B.R. 769, 777 (Bankr. M.D. Pa. 2015); *In re Giquinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008); *In re Antonius*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006).

As to Plaintiff's assertion that it incorporated the state court complaint, there is no reference to that complaint anywhere in the Complaint filed in this Court. Furthermore, the state court complaint was not attached to the Complaint. Consequently, the doctrine of incorporation by reference is not applicable to this Complaint.[12]

As for the substance of the fraud claim, Plaintiff has not made any <u>specific</u> factual allegations regarding Defendant's fraudulent conduct or what fraudulent pretenses or representations were made to obtain the Equipment.[13] A review of Count IV finds only vague and general allegations of wrongdoing. For example, Paragraph 24 of the Complaint states that Defendant "intentionally, wantonly and deliberately purchased the goods in question without intending to pay for them." Plaintiff does not plead specific facts that (1) Defendant made a false

---

> Courts have regarded "false representations" as involving affirmative statements that are false or misleading. "False pretenses," on the other hand, entail implied misrepresentations, omissions, or failures to disclose material facts that create a false impression which is known to the debtor. As for "actual fraud," some courts have held that the term refers to conduct other than classic factual misrepresentations, which involve "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."

*In re Bayer*, 521 B.R. 491, 499–500 (Bankr. E.D. Pa. 2014) (quoting *In re Ricker*, 475 B.R. 445, 456 (Bankr. E.D. Pa. 2012)).

[12] To the extent that Plaintiff attempts to incorporate the state court complaint in an amended complaint, the Court is not inclined to allow incorporation by merely referencing it. The Court's preference is that specific allegations be made within the complaint itself.

[13] Plaintiff did not assert any claim under §523(a)(2)(B) challenging dischargeability based upon a materially false writing.

13

Case 5:23-ap-00042-MJC    Doc 21    Filed 03/22/24    Entered 03/22/24 13:48:02    Desc
Main Document    Page 13 of 16

representation; (2) Defendant knew the representation was false when it was made; and (3) Defendant intended to deprive it or to induce it to act upon his representation.

Similarly, in Paragraph 25, Plaintiff alleges that Defendant "ordered said goods at a time he was already insolvent and planning on filing for bankruptcy." This allegation has no factual support.

Defendant argues in its Brief that the "allegations in the Complaint fail to meet the 'facial plausibility' standard of *Ashcroft v Iqbal* [556 U.S. 662, 678 (2009)], where the Supreme Court stated that the plausibility standard 'asks for more than a sheer possibility that a defendant acted unlawfully and not where a complaint pleads facts that are merely a possibility without the plausibility of entitlement to relief.'" Def. Brief at 16. The Court agrees. Plaintiff has not pleaded with the required specificity the facts necessary to support a claim of fraud or an objection to dischargeability claim under §523(a)(2)(A) as required by Fed. R. Civ. P. 9(b).

### D. Plaintiff Failed to Sufficiently Plead Alter Ego or Piercing the Corporate Veil

Pennsylvania law applies a two part test in determining whether to pierce the corporate veil:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice. ...
> The second element ... —that there be some fraud, wrong or injustice— seems to be nothing more than a restatement of the basic starting point that piercing is an equitable remedy used to prevent injustice.

*Mortimer v. McCool*, 255 A.3d 261, 286–87 (Pa. 2021). The Pennsylvania Supreme Court has adopted certain factors to be considered in disregarding the corporate form, including: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of

14

corporate and personal affairs, and use of the corporate form to perpetrate a fraud." *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 42 (1995) (quoting *Department of Environmental Resources v. Peggs Run Coal Co*, 55 Comwlth. Ct. 312, 423 A.2d 765 (1980)).

Assuming Plaintiff intended on stating that the entity was the buyer (at least in Count IV), Plaintiff has a difficult burden. "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax*, 543 Pa. at 41. The Pa. Supreme Court has cautioned that "any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Mortimer*, 255 A.3d at 268 (quoting *Wedner v. Unemployment Bd. of Review*, 449 Pa. 460, 464 (1972)).

In its Brief, Plaintiff cites to *Reverse Vending Associates v. Tomra Systems US, Inc.*, 655 F. Supp. 1122 (E.D. Pa. 1987) to set forth the requirements for piercing the corporate veil. *Reverse Vending* related to an alter ego theory of liability between two (2) related corporations. Alter ego is another theory used in disregarding the corporate form. It requires "proof (1) that the party … exercised domination and control over corporation; and (2) that injustice will result if corporate fiction is maintained despite unity of interests between corporation and its principal." *Brown v. End Zone, Inc.*, 259 A.3d 473, 490 (Pa. Super. 2021) (citation omitted).

Here, it is clear that Plaintiff has not sufficiently pleaded alter ego or piercing the corporate veil. There is no clarity in the Complaint as to how the apparent "entity" identified in the Exhibits to the Complaint is not a proper corporate entity that would allow the corporate veil to be pierced. If the "MR Mow It All" entity is the buyer of the Equipment from Plaintiff, the general rule is that "[w]henever a corporation makes a contract, it is the contract of the legal entity of the artificial being created by the charter, and not the contract of the individual members." *Wicks v. Milzoco*

15

*Builders, Inc.*, 503 Pa. 614, 620 (1983) (quoting *Bala Corporation v. McGlinn,* 295 Pa. 74, 79 (1929)).

In Count IV Plaintiff makes broad allegations only against Defendant, presumably in his individual capacity. In *Wicks*, the Pa. Supreme Court found that "[w]here the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his." *Id.* at 621. Plaintiff does not assert any facts to show that the corporate entity should be disregarded. In fact, the Complaint does not even mention what corporation it is seeking to pierce and seems to argue that there is no corporate entity. Accordingly, the theories of piercing the corporate veil and alter ego are dismissed.

## VI. CONCLUSION

Based upon the above stated reasons, the Court shall grant Defendant's Motion to Dismiss. Given the alleged conduct of Debtor/Defendant and with the exception of the §727 claim, the Court finds that allowing Plaintiff an opportunity to amend would not be futile and shall allow Plaintiff 21 days to file an amended complaint consistent with this Opinion and the applicable statutory and rule requirements.[14]

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: March 22, 2024

---

[14] Because leave to amend has been granted, the Objection to Claim remains pending.